Daryl M. Crone (Cal. Bar No. 209610)
  daryl@cronehawxhurst.com
Gerald E. Hawxhurst (Cal. Bar No. 220327)
  jerry@cronehawxhurst.com
Timothy D. Biché (Cal. Bar No. 293363)
  tbiche@cronehawxhurst.com
CRONE HAWXHURST LLP
10880 Wilshire Blvd., Suite 1150
Los Angeles, California 90024
Telephone:  (310) 893-5150
Facsimile:   (310) 893-5195

Attorneys for Plaintiffs
TriNet Group, Inc. and TriNet HR Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TRINET GROUP, INC.; and TRINET HR CORPORATION,<br><br>Plaintiffs,<br><br>vs.<br><br>NICHOLAS KRANTZ; HR OUTSOURCING, INC.; and DOES 1-10,<br><br>Defendants. | Case No. 2:16-cv-6447<br><br>**COMPLAINT FOR:**<br><br>**(1) MISAPPROPRIATION OF TRADE SECRETS;**<br>**(2) BREACH OF WRITTEN CONTRACT;**<br>**(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**(4) INTENTIONAL INTERFERENCE WITH CONTRACT;**<br>**(5) STATUTORY UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs TriNet Group, Inc. ("TriNet Group") and its subsidiary, TriNet HR Corporation ("TriNet HR"), for their Complaint against defendants, allege as follows:

**Introduction**

1. TriNet Group is a leading provider of comprehensive human resources solutions for small and midsize businesses. TriNet's solutions are designed to manage an increasingly complex set of HR regulations, costs, risks and responsibilities for its customers, allowing them to focus on operating and growing their core businesses. TriNet HR and other TriNet Group subsidiaries operate under a co-employment business model, whereby employment-related responsibilities are contractually allocated between TriNet HR and other TriNet Group subsidiaries and the customers, which affords Plaintiffs a close relationship with their clients and their clients' employees. Each of Plaintiffs' customers enters into a client service agreement that defines the suite of professional and insurance services and benefits to be provided by Plaintiffs, the fees payable to Plaintiffs, and the division of responsibilities between Plaintiffs and the customer as co-employers.

2. Plaintiffs vigorously compete in the market for their products and services and gladly do so on the merits of those offerings. Plaintiffs have brought this action only because they were forced to do so by the egregious misconduct alleged herein, which threatens them with irreparable harm.

3. TriNet HR employed Defendant Nicholas Krantz ("Krantz") as a salesperson until it terminated Krantz for cause in July 2016, after the company discovered that Krantz had engaged in conduct inconsistent with TriNet's Business Ethics and Code of Conduct Policy and after Krantz refused to cooperate in TriNet HR's investigation of that conduct. Plaintiffs also discovered that Krantz had forwarded to his personal email account thousands of pages of Plaintiffs' highly confidential, trade secret information, including critical information concerning Plaintiffs' existing customers and immediate business prospects, pricing structures,

business practices, and other extremely sensitive and valuable information which is not obtainable from public sources.

4. Very shortly after TriNet HR terminated him, Krantz began working for one of Plaintiffs' direct competitors, Defendant HR Outsourcing, Inc. ("HROI"). As discussed below, HROI would have intimate knowledge of the potential value of the highly confidential trade secret information misappropriated by Krantz because the principals of HROI had previously employed Krantz at Strategic Outsourcing, Inc. ("SOI"), which the principals of HROI ultimately sold to TriNet Group in 2012.

5. On information and belief, Krantz already has used Plaintiffs' confidential information on behalf of HROI to unfairly compete with Plaintiffs. Based on information they have gathered to date, Plaintiffs reasonably believe that Krantz, on behalf of HROI, already has solicited and induced at least one TriNet HR customer to purchase services from HROI rather than from TriNet HR, utilizing the proprietary information he unlawfully misappropriated from TriNet HR.

6. Unfortunately, Plaintiffs also have discovered that HROI likely has engaged in other unfair competition as alleged herein and, at a minimum, has failed to take steps to prevent or cure Krantz's unlawful activities. Among other things, Plaintiffs recently discovered that one of the documents Krantz forwarded to his personal email before leaving TriNet HR was an invoice reflecting payments from HROI made while Krantz was employed with TriNet HR. These payments by HROI were in the name of Krantz's spouse for various "referral fees" as a purported broker, presumably in consideration for Krantz's referral of business to HROI, TriNet HR's competitor. HROI evidently sent Krantz's spouse a draft "HROI PEO Broker Agreement" for the Krantzes to execute after-the-fact, in order to try to cover up their misdeeds.

7. Given Krantz's misappropriation of Plaintiffs' confidential trade secret information, the prior employment of Krantz by the principals of HROI, Krantz's evident use of Plaintiffs' confidential trade secret information on behalf of HROI,

the previously unknown duplicitous economic relationship between Krantz and HROI, and other facts alleged in greater detail below that, in light of the Krantz revelations, appear to be more than just coincidence, Plaintiffs have no choice but to bring this action to address Krantz's misconduct as well as seek exigent injunctive relief against HROI, in addition to an award of damages based on the extent of any misappropriation by Krantz and/or HROI, in an amount to be proved at trial. Plaintiffs otherwise cannot have any reasonable assurance that their confidential information will remain secure. There is a significant, immediate threat of Defendants' continued use of Plaintiffs' proprietary and confidential information to unfairly compete with Plaintiffs for business and interfere with Plaintiffs' relationships with their customers.

8. Defendants' misconduct has at all times been willful and malicious. In addition to an award of compensatory and punitive damages, Defendants' misconduct entitles Plaintiffs to, among other things, a preliminary and permanent injunction as prayed for herein.

**The Parties**

9. Plaintiff TriNet Group is, and at all relevant times was, a corporation organized and existing under the laws of Delaware with its principal place of business located in San Leandro, California.

10. Plaintiff TriNet HR is, and at all relevant times was, a corporation organized and existing under the laws of California with its principal place of business located in San Leandro, California.

11. Defendant Nicholas Krantz is an individual who, on information and belief, resides in Los Angeles County, California.

12. Defendant HROI is and, on information and belief at all relevant times was, a corporation organized and existing under the laws of Georgia with its principal place of business located in Lawrenceville, Georgia.

13. The true names and capacities of the defendants sued herein as Does 1 through 10 are not known to Plaintiffs, which therefore sue said defendants by such fictitious names. On information and belief, Does 1 through 10 are the agents, co-conspirators or joint venturers of Krantz and HROI and are acting in concert or participation with them in connection with the improprieties alleged herein, including, for example, by engaging in further acts of misappropriation of Plaintiffs' trade secrets. Plaintiffs will amend this Complaint to allege their true names and capacities when the same are ascertained.

14. Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned herein, each and every defendant was the agent, servant, employee, joint venturer, partner, subsidiary, and/or co-conspirator of each other defendant, and that, in performing or failing to perform the acts herein alleged, each was acting individually as well as through and in the foregoing alleged capacity and within the course and scope of such agency, employment, joint venture, partnership, subsidiary and/or conspiracy, and each defendant ratified and affirmed the acts and omissions of the other defendant(s). Plaintiffs are further informed and believe that each defendant, in taking the actions alleged herein and/or ratifying the actions alleged herein, acted within the course and scope of such authority and, at the same time, for his/her/its own financial and individual advantage, as well as in the course and scope of such employment or agency.

**Jurisdiction and Venue**

15. This action arises under the laws of the United States and, specifically, the federal Defend Trade Secrets Act of 2016, codified at Title 18, United States Code, Chapter 90, as well as the unfair competition laws of the State of California, and the common law. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). This Court has pendent jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a).

16. Krantz is subject to personal jurisdiction in this District because he resides and/or does business in Los Angeles County, California, and, on information and belief, has committed the acts complained of herein in Los Angeles County, California. HROI is subject to personal jurisdiction in this District because it maintains an office in Los Angeles County, California, at which, on information and belief, it employs Krantz, and, furthermore, on information and belief, HROI has directly benefitted from Krantz's misconduct undertaken in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

**Factual Allegations Common to All Claims for Relief**

18. TriNet HR is a wholly-owned subsidiary of TriNet Group. As alleged above, TriNet Group and its subsidiaries are collectively a leading provider of outsourced, full-service human resources solutions to small and midsize businesses.

19. In or about June 2011, Krantz began employment with a company known as Strategic Outsourcing, Inc. ("SOI"), as a Professional Sales Consultant. TriNet Group acquired SOI in October 2012. At the time of the acquisition, Carl Guidice, Jr. ("Guidice") was the CEO of SOI and Anthony Danon ("Danon") served as COO of SOI. Guidice is the current CEO of HROI and, on information and belief, Danon is a member of the Board of Directors of HROI.

20. From October 2012 until February 2014, Krantz remained an employee of SOI. In February 2014, Krantz formally commenced employment with TriNet HR. In the course and scope of his employment at TriNet HR (and SOI), Krantz had access to, and did access, highly sensitive proprietary trade secret information pertaining to Plaintiffs' customers and accounts, pricing structures, identities of key contacts within the industry, information regarding the unique needs and preferences of particular customers and prospective customers, and other information which is not obtainable from public sources (the "Customer Information"). Said proprietary trade secret information resulted from great expense (including through the

acquisition of companies, such as SOI), years of hard work, information gathering, and trial and error by Plaintiffs.

21. At all relevant times, Plaintiffs have maintained the secrecy of their Customer Information by storing critical data within a secured computer system, to which access is limited. In addition, Plaintiffs use firewalls, private networks, and other technical mechanisms to ensure the security of all of Plaintiffs' Customer Information, and maintain password protection on company computers. Plaintiffs also require badges and other security mechanisms to control access to their facilities so as to safeguard their confidential and proprietary information. Plaintiffs also instruct and repeatedly remind employees that the above information should be protected from public disclosure.

22. In addition, Plaintiffs require that all their employees execute a comprehensive confidentiality agreement. To that end, on February 14, 2014, Krantz executed a "Proprietary Information and Invention Agreement" (the "PIIA") with TriNet HR providing for the protection of Plaintiffs' confidential information. A true and correct copy of the PIIA that Krantz signed is attached as Exhibit A and incorporated herein as though set forth at length.

23. Section 1 of the PIIA, entitled "Maintaining Confidential Company Information," recited that Krantz:

> will not, during and after my employment with TriNet HR Corporation or any of its successors, subsidiaries, assigns, related companies and divisions (collectively, the "Company"), (i) directly or indirectly disclose to any person or entity, or use, except for the sole benefit of the Company, any of the Company's confidential or proprietary information or trade secrets (collectively, "Company Information") or (ii) publish or submit for publication, any article or book relating to the Company, its development projects, or other aspects of Company business, without the prior written permission from the Company's Chief Legal Officer. By way of illustration and not limitation, Company Information shall include the Company's trade secrets; research and development plans or projects; data and reports; computer materials such as software programs, instructions, source and object code, and printouts; products, prospective

products, inventions, developments, and discoveries; data compilations, development databases; business improvements; business plans (whether pursued or not); ideas; budgets; unpublished financial statements; licenses; pricing strategy and cost data; information regarding the skills and compensation of other employees of the Company; the personally identifying and protected health information of other employees of the Company, including worksite employees of TriNet customers; lists of current and potential customers of TriNet; strategies, forecasts and other marketing information and techniques; employment and recruiting strategies and processes; sales practices, strategies, methods, forecasts, compensation plans, and other sales information; investor information; and the identities of the Company's suppliers, vendors, and contractors, and all information about those supplier, vendor and contractor relationships such as contact person(s), pricing and other terms. The definition of Company Information shall include both 'know-how' (i.e., information about what works well) and 'negative know-how' (i.e., information about what does not work well). I further acknowledge and recognize that all Company Information is confidential and proprietary, and shall remain the exclusive property of the Company. To the extent that I have any question as to whether something constitutes Company Information, I agree to obtain the express written permission of my manager before using or disclosing the information in any way. Notwithstanding the foregoing, I understand that the restrictions on my disclosure or use of Company Information described in this paragraph shall not limit in any way any right I may have to disclose or use information pursuant to the National Labor Relations Act or any other applicable law.

24. Section 2 of the PIIA, entitled "Third Party Information," recited that:

I understand that the Company has in the past received, and in the future may receive from third parties, confidential or proprietary information ("Third Party Information"), subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During and after my employment with the Company, I will hold all Third Party Information received by me in the strictest confidence and will not disclose it to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use it, except in connection with my work for the Company.

25. Section 4 of the PIIA, entitled "Return of Company Property," recited that:

> When I leave the employ of the Company, I will deliver to the Company (and will not keep in my possession, copy, recreate or deliver to anyone else in whole or in part) any and all items including but not limited to files, drawings, notes, notebooks, memoranda, specifications, records, business plans and forecasts, financial information, sales materials, customer and prospective customer lists, reports, programs, proposals, specifications computer-recorded information (including emails), tangible property (including but not limited to laptop/desktop computers, flash drives, CD-ROMs, cell phones, blackberries or other PDA devices), building entry/access cards, identification badges and keys, devices, and documents, together with all copies thereof (in whatever medium recorded) and any other property or material containing or disclosing Company Information or Third Party Information. I further agree that any property owned by the Company, wherever located, including disks and other storage media, computers, filing cabinets, desks/desk drawers, or lockers, is subject to inspection by Company personnel at any time during my employment and after, with or without notice.

26. Section 10 of the PIIA, entitled "Legal and Equitable Remedies," recited that:

> I recognize that my violation of this Agreement exposes the Company to irreparable harm and that the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond, and without prejudice to any other rights and remedies (including recovery of monetary damages) that the Company may have for a breach of this Agreement.

27. In late May 2016, Plaintiffs discovered that Krantz had engaged in conduct inconsistent with TriNet's Business Ethics and Code of Conduct Policy. Specifically, he contacted a competitor multiple times, improperly representing that he was "with" one of TriNet HR's potential customers, in order to obtain confidential documents and information. Krantz also used his personal email account in communications with this competitor to hide his misconduct.

28. After TriNet HR's competitor brought his misconduct to TriNet's

- 8 -

COMPLAINT

attention, TriNet HR placed Krantz on paid administrative leave while it completed an investigation of Krantz's actions, with which Krantz declined to voluntarily cooperate.

29. In the course of their investigation, Plaintiffs learned that on June 14 and 15, 2016, Krantz had sent numerous documents from his TriNet HR email account to his personal email account that contained thousands of pages of Plaintiffs' confidential, proprietary, and/or trade secret information. A true and correct copy of those emails (without attachments) are attached collectively as Exhibit B and incorporated herein as though set forth at length.

30. TriNet HR terminated Krantz's employment on July 12, 2016, due to, among other things, Krantz's pattern and practice of engaging in conduct in violation of company policies, guidelines, and/or procedures. TriNet HR concurrently demanded, in its written termination notice to Krantz, the "immediate return of all confidential, proprietary, and/or trade secret TriNet information that you sent to yourself as well as written assurances that you have deleted and destroyed, and will not and have not used or disseminated, any and all confidential, proprietary, and/or trade secret TriNet information in your possession, custody, or control." TriNet HR further demanded written assurance of Krantz's compliance with that demand by "close of business on July 13, 2016," or TriNet HR would "take legal action to protect its interests." On July 15, 2016, TriNet HR repeated its demand that Krantz "immediately return all company property in [his] possession." To date, however, Krantz has ignored all these demands.

31. On information and belief, very shortly after TriNet HR terminated his employment, Krantz began working for one of Plaintiffs' direct competitors, Defendant HROI. Significantly, Guidice and Danon, the current CEO and a board member of HROI, respectively, previously served as the CEO and COO of SOI, for whom Krantz had previously worked and which, as alleged above, TriNet Group acquired in October 2012. On information and belief, Krantz, on behalf of HROI,

already has solicited—and, on at least one occasion, has secured—the business of TriNet HR's customers and potential customers, utilizing Plaintiffs' confidential Customer Information to do so. Specifically, shortly after the termination of his TriNet HR employment and his joining HROI, Krantz evidently induced one of TriNet HR's existing customers—with which Krantz dealt while a TriNet HR employee—to terminate its contract with TriNet HR and utilize HROI's services instead. And regardless whether Krantz's activities have led to termination of Plaintiffs' contracts with certain of their customers, at a minimum, Krantz's continuing misconduct has caused or threatens to cause disruption of the close commercial relationships between Plaintiffs and their customers, as alleged above.

32. Despite demands that he cease use of Plaintiffs' confidential information, Krantz has refused to do so, let alone certify destruction of all of Plaintiffs' confidential information remaining in his possession.

33. Incredibly enough, Plaintiffs also discovered within the documents that Krantz had forwarded to his personal email account an HROI "Incentive Report" dated August 2015, reflecting that HROI made payments of various "referral fees" purportedly to Krantz's wife, evidently in consideration of Krantz's referral of business to HROI while he was a TriNet HR employee. A true and correct redacted copy of the HROI Incentive Report is attached as Exhibit C and incorporated herein as though set forth at length. Then, on September 9, 2015, Krantz's wife transmitted a draft "HROI PEO Broker Agreement" to Krantz, evidently so that they could enter into that agreement with HROI after-the-fact, in order to try to cover up their misdeeds. A true and correct copy of Mrs. Krantz's September 9, 2015 email message is attached as Exhibit D and incorporated herein as though set forth at length. In light of this additional revelation, Plaintiffs have serious concern that HROI has known of and abetted Krantz's continuing misconduct since long before TriNet HR terminated his employment. At a minimum, the Incentive Report and

September 9, 2015 email constitute powerful evidence of Krantz's and, in all likelihood, HROI's, willfulness.

34. Plaintiffs are informed and believe, and based thereon allege, that Krantz and HROI have likely engaged in further misappropriation of trade secrets, unfair competition and other wrongful acts, and that all Defendants have engaged in a pattern and practice of using Plaintiffs' confidential and proprietary information to unlawfully compete with Plaintiffs and to otherwise injure them. Indeed, the information gathered by Plaintiffs to date unfortunately appears to reflect that Krantz's activities complained of herein constitute only part of a pattern and practice of misconduct recently undertaken by HROI to unfairly compete with Plaintiffs.

35. HROI's principals previously owned SOI and, therefore, cannot seriously dispute the confidentiality of the TriNet information at issue in this action, or its independent economic value gained from not being generally known in the industry. Subject to further discovery, and on information and belief, Plaintiffs are aware that dozens of additional former employees of Plaintiffs are now working for HROI and may have misappropriated and unfairly utilized and/or may be currently utilizing Plaintiffs' confidential information for competitive advantage. For example, Joseph Woodruff, a former controller at SOI and then Director of Treasury for Plaintiffs, evidently commenced working for SOI while still employed by Plaintiffs. Plaintiffs will seek amendment of their Complaint to more fully describe the extent of HROI's wrongful conduct following discovery taken in this case.

### FIRST CLAIM FOR RELIEF

(Misappropriation of Trade Secrets By Plaintiffs Against All Defendants)

36. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 35, above.

37. At all times relevant herein, Plaintiffs were in possession of trade secrets in their confidential and proprietary information related to existing and potential customers and accounts, including unique customer preferences, contracts,

- 11 -

COMPLAINT

pricing structures, reports, processes, presentations, business methods and plans, marketing and business plans, identities of key contacts within the industry, and other information which is not obtainable from public sources. Plaintiffs' Customer Information enables them to effectively market to existing and potential customers and to offer them products and services customized to their unique needs and circumstances. Said information is not generally known to the public or within the relevant industry, and derives independent economic value from this fact.

38. Plaintiffs have expended millions of dollars and a significant amount of time and other resources in developing their proprietary information. In addition, Plaintiffs go to great lengths to protect the secrecy of this information by, among other things: executing confidentiality agreements with all employees; maintaining firewalls, private networks, and other technical mechanisms to ensure the security of Plaintiffs' confidential information; labeling certain written communications as confidential; employing passwords; reminding employees of their confidentiality obligations; and employing several other security mechanisms to protect Plaintiffs' confidential information.

39. As noted above, Plaintiffs are informed and believe, and based thereon allege, that Krantz and HROI have misappropriated Plaintiffs' confidential and proprietary information and converted the same to their own use while Krantz has been employed by HROI. Among other things, Defendants' apparent improper use of Plaintiffs' Customer Information has enabled or threatens to enable the Defendants to successfully solicit TriNet HR's existing and potential customers less expensively and by undercutting TriNet HR's confidential pricing formulae.

40. As alleged herein, Defendants acquired and, on information and belief, already have used Plaintiffs' Customer Information improperly, in a manner that constitutes misappropriation in violation of federal law, as provided under 18 U.S.C. § 1839(5). Krantz also used improper means to obtain Plaintiffs' Customer Information. Among other things, he intentionally and improperly kept Plaintiffs'

- 12 -
COMPLAINT

1  Customer Information at the conclusion of his employment and has breached the
2  PIIA.  On information and belief, and subject to discovery in this action, HROI and
3  Does 1-10 have used Plaintiffs' confidential Customer Information, which they
4  knew or reasonably should have known was acquired by improper means, also in
5  violation of federal law.  At a minimum, HROI is liable for any misappropriation
6  committed by its employees undertaken as part of their duties to actively solicit
7  customers on HROI's behalf.  Here again, Plaintiffs will seek amendment of their
8  Complaint to more fully describe the extent of HROI's wrongful conduct following
9  discovery taken in this case.

10  41.  As a proximate result of Defendants' acts as alleged herein, Plaintiffs
11  have suffered damages, and will continue to suffer damages, unless Defendants are
12  ordered to immediately return said confidential, trade secret information.  Plaintiffs
13  are also entitled to an award, under 18 U.S.C. § 1836(b)(3)(B), of their actual loss
14  caused by the misappropriation of the trade secret(s) and damages for any unjust
15  enrichment caused by the misappropriation of the trade secret(s) that is not
16  addressed in computing damages for Plaintiffs' actual loss.  The exact amount of
17  Plaintiffs' damages and/or Defendants' ill-gotten gains will be proved at trial.
18  Alternatively, and at a minimum, Plaintiffs are entitled to a reasonable royalty for
19  Defendants' wrongful misappropriation and misuse of Plaintiffs' trade secrets, in an
20  amount to be proved at trial.

21  42.  Defendants' wrongful conduct in misappropriating Plaintiffs'
22  confidential business information and disclosing and utilizing said information will
23  continue unless and until enjoined and restrained by order of this Court.  Plaintiffs
24  have no adequate remedy at law for the injuries currently being suffered in that
25  Defendants threaten to continue to wrongfully solicit Plaintiffs' existing and
26  potential clientele and customers utilizing information that was wrongfully
27  misappropriated from Plaintiffs, including but not limited to customer information
28  that is not generally available to the public at large.  Under 18 U.S.C.

1 § 1836(b)(3)(A), Plaintiffs are entitled to a preliminary and permanent injunction
2 against Defendants as prayed for herein.

3     43. Plaintiffs are informed and believe, and on that basis allege, that Defendants' conduct was, and is, willful and malicious. Plaintiffs are therefore entitled to recover from Defendants exemplary damages in the amount of twice the total damages or reasonable royalty awarded, under 18 U.S.C. § 1836(b)(3)(C). Plaintiffs are also entitled to an award of attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

## SECOND CLAIM FOR RELIEF

(Breach of Written Contract by TriNet HR Against Krantz)

44. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 35, above.

45. TriNet HR has fully performed any conditions which it was obligated to satisfy under the written PIIA entered into with Krantz, except those which have been excused by Krantz's prior material breach.

46. Krantz breached the PIIA by failing to abide by his nondisclosure obligations, as alleged herein, and by failing to destroy all of Plaintiffs' confidential information still in his possession at the time of the termination of his employment, despite repeated demands that he do so.

47. As a result of the foregoing breaches of contract, TriNet HR has been damaged in an amount that shall be proved at trial. TriNet HR is also entitled to an award of its attorneys' fees.

48. Krantz's wrongful conduct will continue unless and until enjoined and restrained by order of this Court. TriNet HR has no adequate remedy at law for the injuries currently being suffered in that Krantz threatens to continue to wrongfully solicit Plaintiffs' existing and potential clientele and customers utilizing information that was wrongfully misappropriated from Plaintiffs, including but not limited to Customer Information that is not generally available to the public at large. Under

section 10 of the PIIA and the inherent power of this Court, TriNet HR is entitled to a preliminary and permanent injunction against Krantz as prayed for herein.

### THIRD CLAIM FOR RELIEF

(Intentional Interference with Prospective Economic Advantage

By Plaintiffs Against All Defendants)

49. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 35, above.

50. Plaintiffs are informed and believe, and based thereon allege, that Defendants have misappropriated Plaintiffs' confidential Customer Information and used the same to solicit existing and potential TriNet customers. Among other things, on information and belief, Krantz evidently has misused Plaintiffs' Customer Information in order to benefit HROI, one of Plaintiffs' direct competitors.

51. Subject to further discovery and on information and belief, Plaintiffs strongly suspect that additional former employees of Plaintiffs now working for HROI have secreted and utilized and/or are currently utilizing Plaintiffs' confidential information for competitive advantage. Plaintiffs will seek amendment of their Complaint to more fully describe the extent of HROI's wrongful conduct following discovery taken in this case.

52. As a result of the foregoing wrongful acts by Defendants, Plaintiffs' economic relationships have been disrupted, and they have been damaged in an amount to be proved at trial.

53. Plaintiffs are informed and believe, and based thereon allege, that the acts of Defendants alleged herein were willful, oppressive, fraudulent, despicable and in conscious disregard of the rights of Plaintiffs and the resulting harm to them. Defendants are liable for punitive and exemplary damages in amount to be established according to proof at time of trial.

54. Plaintiffs are also informed and believe, and based thereon allege, that Defendants' wrongful acts will continue to cause injury to Plaintiffs and that such

injury will continue unless enjoined and restrained by this Court. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants as prayed for herein.

## FOURTH CAUSE OF ACTION

(Intentional Interference with Contract By Plaintiffs Against All Defendants)

55. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 35, above.

56. As alleged above, TriNet HR entered into a valid contract with a third-party customer for its services, of which Krantz was aware during the course of his employment with TriNet HR.

57. On information and belief, shortly after the termination of his TriNet HR employment and his joining HROI, Krantz evidently induced TriNet HR's existing customer—with which Krantz dealt while a TriNet HR employee—to terminate its contract with TriNet HR and utilize HROI's services instead, and evidently utilized Plaintiffs' confidential information to do so.

58. On information and belief, and subject to discovery in this action, Defendants also appear to have utilized improper means to cause the breach of other contracts between TriNet HR and other third-parties. Here again, Plaintiffs will seek amendment of their Complaint to more fully describe the extent of Defendants' wrongful conduct following discovery taken in this case.

59. As a result of this misconduct, Plaintiffs have been damaged in an amount to be proved at trial. In addition, Plaintiffs are informed and believe, and based thereon allege, that Defendants' acts alleged herein were willful, oppressive, fraudulent, despicable and in conscious disregard of the rights of Plaintiffs and the resulting harm to them. Defendants are liable for punitive and exemplary damages in amount to be established according to proof at time of trial.

## FIFTH CLAIM FOR RELIEF

(Statutory Unfair Competition By Plaintiffs Against All Defendants)

60. Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 35, above.

61. Defendants' actions described herein in misappropriating Plaintiffs' Customer Information and other information and property that belonged to Plaintiffs, and unfairly soliciting existing and potential customers of Plaintiffs, constitutes unlawful, unfair and fraudulent business acts and practices, in violation of California Business & Professions Code §§ 17200, et seq.

62. As a direct result of Defendants' acts of unfair competition, Plaintiffs have suffered and will continue to suffer harm as described herein, and such harm will continue unless the Court enjoins and restrains Defendants' actions. Defendants should be required to restore to Plaintiffs any and all of their confidential information and assets, and any other information of Plaintiffs' in Defendants' possession, custody or control. Plaintiffs also seek injunctive relief to stop Defendants from unfairly soliciting Plaintiffs' current and potential customers utilizing their confidential information. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants as prayed for herein.

### Prayer

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

A. Enter a preliminary and permanent injunction, restraining and enjoining Defendants, and their agents, servants and employees, and all persons acting thereunder, in concert with, or on their behalf, from continuing to use Plaintiffs' confidential and trade secret information in the solicitation of customers or potential customers for their goods and services;

B. Enter an order requiring the Defendants to return to Plaintiffs all of their confidential and trade secret information remaining in Defendants' possession;

C. Enter an award of monetary damages against the Defendants and in favor of Plaintiffs in an amount to be proved at trial;

D. Enter an award of exemplary and punitive damages against the Defendants and in favor of Plaintiffs;

E. Enter an order requiring Defendants to disgorge all their ill-gotten gains to Plaintiffs, and awarding Plaintiffs a constructive trust over those sums;

F. Enter an award against the Defendants of Plaintiffs' attorneys' fees and costs incurred in this action; and

G. Award such other relief as the Court may deem appropriate and just under the circumstances.

DATED: August 26, 2016        CRONE HAWXHURST LLP

By    /s/ Daryl M. Crone
Daryl M. Crone
Attorneys for Plaintiffs
TriNet Group, Inc. and
TriNet HR Corporation

## **DEMAND FOR JURY TRIAL**

Plaintiffs TriNet Group, Inc. and TriNet HR Corporation hereby demand trial by jury on all matters so triable.

DATED: August 26, 2016        CRONE HAWXHURST LLP


By   /s/ Daryl M. Crone
    Daryl M. Crone
    Attorneys for Plaintiffs
    TriNet Group, Inc. and
    TriNet HR Corporation

CRONE HAWXHURST LLP
10880 WILSHIRE BOULEVARD, SUITE 1150
LOS ANGELES, CALIFORNIA 90024
Tel: (310) 893-5150 • Fax: (310) 893-5195

- 19 -

COMPLAINT